FILED
NOV 04 2011
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MATTICK, | ) | FILE NO. CIV. 11-5085 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| GREAT WEST CASUALTY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## JURISDICTION

1. Plaintiff is a resident of Spearfish, South Dakota.

2. Great West Casualty Company (Great West) is a corporation with its principal place of business outside the state of South Dakota.

3. The amount in controversy exceeds $75,000.

4. The Court has jurisdiction under 28 U.S.C. 1332, diversity of citizenship.

## FACTUAL BACKGROUND

5. In September, 2008, Plaintiff worked as an employee of Dubym Trucking in Black Hawk, South Dakota.

6. In the course and within the scope of his employment, Plaintiff fell backwards from a truck, knocking him unconscious, and injuring his right shoulder requiring surgery.

7. Plaintiff gave notice of this injury to his employer that same day.

8. Plaintiff's work related injury made him eligible for payment of his medical bills and other insurance benefits under worker's compensation insurance.

9. Great West is the workers' compensation insurer for Dubym Trucking.

10. Plaintiff presented proof of his claim and its relation to his work duties to Defendants.

11. Great West initially accepted Claimant's injury as work related and paid indemnity and medical benefits.

12. Great West then elected to have Mattick examined by Dr. Jerry Blow, a physician in Sioux Falls that Great West had hired in other cases to provide medical opinions concerning injuries to claimants.

13. Dr. Blow's report stated that Claimant's injury and treatment up until April 1, 2009, was work related, but that his pain and disability after April 1, 2009, was not work related, and was due instead to "underlying degenerative diseases of the right shoulder."

14. After the report by Dr. Blow, Great West contacted Mattick's employer and told them Mattick had been released to return to work.

15. Mattick could not actually return to work, so he lost his job.

16. Mike Mattick continued having pain so he saw orthopedic surgeon Dr. Stuart Fromm. Dr. Fromm conducted examinations and tests over several visits.

17. Dr. Fromm found that Mattick showed a "classic drop-arm test," indicating a torn supraspinatous muscle in the shoulder known as a PASTA lesion.

18. Dr. Fromm recommended surgery.

19. Dr. Fromm also related Mattick's condition and need for surgery to the work injury.

20. Mattick wanted the surgery, but had no insurance other than his worker's

compensation coverage with Great West.

21. Mattick went to attorney Mike Simpson seeking help concerning Great West's refusal to provide coverage.

22. Attorney Simpson obtained the records from Dr. Fromm and on September 21, 2009, mailed them to Great West, asking that Great West review the information and reconsider its denial.

23. On October 2, 2009, Great West issued a letter refusing to overturn its earlier denial of further treatment.

24. Great West issued the October 2, 2009, letter without providing Dr. Blow copies of the new records received in September, 2009.

25. Great West issued the letter of October 2, 2009, without obtaining Dr. Blow's review of the new records received in September, 2009.

26. Great West rejected the opinions of orthopedic surgeon Fromm on October 2, 2009, without discussing those opinions with Dr. Blow, or any other physician.

27. As a result of Great West's refusal to reconsider, Mattick had to hire an attorney and initiate litigation in November, 2009.

28. Great West's answer to that litigation again denied any benefits were owing.

29. Great West forced Mattick to go through months of litigation.

30. On April 30, 2010, shortly before the May 10, 2010, pre-hearing conference set for Mattick's case, Great West's attorney informed Mattick's attorney that Dr. Blow had changed his opinion.

31. Great West now admitted benefits were owing and agreed to pay.

32. Dr. Fromm performed surgery on Mattick's shoulder in July, 2010, which confirmed a PASTA lesion, and improved Mattick's condition and his pain.

## COUNT I – BAD FAITH

33. Great West knew or should have known that it lacked a reasonable basis to deny benefits.

34. Great West failed to conduct a reasonable investigation of the Plaintiff's claim, and instead set out looking for ways to deny it, or to reduce its expenses.

35. Defendants failed to give equal consideration to the interests of the Plaintiff, and has instead placed its own interests above those of the Plaintiff.

36. As a result of the unreasonable denial and delay of Plaintiff's claim, Plaintiff has been damaged as follows:

   (a) Plaintiff incurred delays in resolving his claim;

   (b) Plaintiff incurred delays in obtaining treatment and relief from his shoulder pain;

   (c) Plaintiff incurred unnecessary attorney fees and litigation expenses;

   (d) Plaintiff suffered frustration, anxiety, aggravation, embarrassment, and mental distress.

WHEREFORE, Plaintiff seeks the following relief:

1. Compensatory damages in an amount to be determined at trial.
2. Punitive damages in an amount to be determined at trial.
3. Prejudgment interest as allowed by law.
4. Other relief as deemed appropriate and necessary.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated this 2 day of November, 2011.

By: _____
Mike Abourezk
Attorney for Plaintiff
Post Office Box 9460
2020 W. Omaha St.
Rapid City, South Dakota 57709
(605) 342-0097